# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 17-CR-075 (FAB) |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CHANGE OF PLEA HEARING |
| | ) | |
| ANGEL RAFAEL CONTRERAS-DELGADO, | ) | |
| Defendant. | ) | |

TRANSCRIPT OF CHANGE OF PLEA HEARING
HELD BEFORE THE HONORABLE JUDGE FRANCISCO A. BESOSA
SAN JUAN, PUERTO RICO
Thursday, April 20, 2017

APPEARANCES:

For the United States:
                    MARC S. CHATTAH, AUSA
                    United States Attorney's Office
                    Torre Chardón, Suite 1201
                    350 Carlos Chardón Street
                    San Juan, PR 00918

For the Defendant:
                    JUAN J. MICHELEN, AFPD
                    Federal Public Defender's Office
                    Patio Gallery Building
                    241 Franklin D. Roosevelt Ave.
                    Hato Rey, PR 00918-2441

Produced by mechanical stenography; computer-aided
transcription

Joe Reynosa, CSR, RPR
Official Court Reporter

1          (PROCEEDINGS COMMENCED AT 2:35 P.M.)

2

3          THE CLERK:  Criminal Case No. 17-075, United States

4   of America versus Angel Rafael Contreras-Delgado for Change

5   of Plea Hearing.

6          On behalf of the Government, Assistant United

7   States Attorney Marc S. Chattah.

8          On behalf of the Defendant, Assistant Federal

9   Public Defender Juan J. Michelen.

10          Defendant is present and assisted by the certified

11   court interpreter.

12          MR. MICHELEN:  Good afternoon, Your Honor.

13          THE COURT:  Please put Mr. Contreras under oath.

14          THE CLERK:  Yes, Your Honor.

15

16          **ANGEL RAFAEL CONTRERAS-DELGADO,**

17            after having been first duly

18          sworn or affirmed upon oath, was examined

19              and testified as follows:

20

21          THE COURT:  Mr. Michelen, this is a straight plea?

22          MR. MICHELEN:  Yes, Your Honor.

23          THE COURT:  Mr. Contreras, before I accept your

24   petition to enter a plea of guilty, I have to determine that

25   you are competent to make the plea and that your petition is

1    completely voluntary.

2              Do you understand that?

3              DEFENDANT CONTRERAS-DELGADO:  Yes.

4              THE COURT:  Do you understand that you are now

5    under oath?

6              DEFENDANT CONTRERAS-DELGADO:  Yes.

7              THE COURT:  If you answer any of my questions

8    falsely, your answers may later be used against you in a

9    prosecution for perjury or for making a false statement.

10             Do you understand that?

11             DEFENDANT CONTRERAS-DELGADO:  Yes.

12             THE COURT:  Mr. Contreras, please state your full

13   name.

14             DEFENDANT CONTRERAS-DELGADO:  Angel Rafael

15   Contreras-Delgado.

16             THE COURT:  How old are you?

17             DEFENDANT CONTRERAS-DELGADO:  23.

18             THE COURT:  How far did you go in school?

19             DEFENDANT CONTRERAS-DELGADO:  Ninth.

20             THE COURT:  Have you been treated recently for any

21   type of mental illness?

22             DEFENDANT CONTRERAS-DELGADO:  Yes.

23             THE COURT:  What mental illness have you been

24   treated for?

25             DEFENDANT CONTRERAS-DELGADO:  Depression.

1          THE COURT:  When were you treated for depression?

2          DEFENDANT CONTRERAS-DELGADO:  At the institution.

3          THE COURT:  Yes, but which institution?

4          DEFENDANT CONTRERAS-DELGADO:  At the federal one.

5          THE COURT:  After you were arrested for this case?

6          DEFENDANT CONTRERAS-DELGADO:  Yes.

7          THE COURT:  And what treatment have you received?

8          DEFENDANT CONTRERAS-DELGADO:  Psychological help

9   and medication.

10         THE COURT:  What medication were you given?

11         DEFENDANT CONTRERAS-DELGADO:  Mirtazapine,

12  50 milligrams.

13         THE COURT:  And how often do you take that

14  medication?

15         DEFENDANT CONTRERAS-DELGADO:  One in the morning;

16  one at night.

17         THE COURT:  Did you take your medication this

18  morning?

19         DEFENDANT CONTRERAS-DELGADO:  Yes.

20         THE COURT:  Are you feeling okay today?

21         DEFENDANT CONTRERAS-DELGADO:  Yes.

22         THE COURT:  Do you think you can make a knowing and

23  voluntary plea?

24         DEFENDANT CONTRERAS-DELGADO:  Yes.

25         THE COURT:  Did you have any problems with

1   depression before you were arrested?

2        DEFENDANT CONTRERAS-DELGADO:  Yes.

3        THE COURT:  When?

4        DEFENDANT CONTRERAS-DELGADO:  In a stage of my life

5   when I was about eight or nine years of age.

6        THE COURT:  And what type of treatment did you

7   receive then?

8        DEFENDANT CONTRERAS-DELGADO:  Psychological

9   therapy.

10       THE COURT:  How old were you when that

11  psychological assistance ceased?

12       DEFENDANT CONTRERAS-DELGADO:  If I tell you, I

13  could be mistaken.  I don't recall.

14       THE COURT:  Were you still a little boy?

15       DEFENDANT CONTRERAS-DELGADO:  Yes.

16       THE COURT:  Okay.

17       Since then until now when you have been in prison,

18  you haven't had any problem with depression?

19       DEFENDANT CONTRERAS-DELGADO:  Yes.  A little bit.

20  I have been receiving treatment as to that.

21       THE COURT:  But you mentioned that you were

22  receiving treatment at the prison.  Did you -- did this

23  depression start when you were arrested?

24       DEFENDANT CONTRERAS-DELGADO:  I already came with

25  depression from when I was on the street.

1     THE COURT: But you hadn't had any treatment since

2 you were a little boy.

3     DEFENDANT CONTRERAS-DELGADO: Uh-huh.

4     THE COURT: Yes or no?

5     DEFENDANT CONTRERAS-DELGADO: No.

6     THE COURT: Have you been treated recently for

7 addiction to any type of narcotic drug?

8     DEFENDANT CONTRERAS-DELGADO: No.

9     THE COURT: Are you currently under the influence

10 of any type of narcotic drug?

11     DEFENDANT CONTRERAS-DELGADO: No.

12     THE COURT: Other than the medication that you have

13 already told me that you are taking for depression, are you

14 taking any other type of medication?

15     DEFENDANT CONTRERAS-DELGADO: No.

16     THE COURT: Are you currently under the influence

17 or have you drunk any alcoholic beverage within the last

18 24 hours?

19     DEFENDANT CONTRERAS-DELGADO: No.

20     THE COURT: Mr. Contreras, what is it that you want

21 to do today here in court?

22     DEFENDANT CONTRERAS-DELGADO: Accept my guilt.

23     THE COURT: Mr. Michelen, do you have any doubts as

24 to Mr. Contreras' competence to plead?

25     MR. MICHELEN: I do not, Your Honor.

1        THE COURT:  Mr. Chattah, do you have any doubts?

2        MR. CHATTAH:  No, Your Honor.

3        THE COURT:  Based on his answers to my questions

4   and his appropriate demeanor, I find Defendant Angel Rafael

5   Contreras-Delgado to be competent to enter his plea of

6   guilty.

7        Mr. Contreras, did you receive a copy of the

8   indictment that's pending against you?

9        DEFENDANT CONTRERAS-DELGADO:  Yes.

10        THE COURT:  Did you discuss the charge in the

11   indictment with your attorney, with Mr. Michelen?

12        DEFENDANT CONTRERAS-DELGADO:  Yes.

13        THE COURT:  Did you discuss your decision to plead

14   guilty with Mr. Michelen?

15        DEFENDANT CONTRERAS-DELGADO:  Yes.

16        THE COURT:  Are you fully satisfied with the

17   counsel, representation and advice given to you by

18   Mr. Michelen?

19        DEFENDANT CONTRERAS-DELGADO:  Totally.

20        THE COURT:  Mr. Contreras, when you were arrested

21   and you were brought to this court, you were taken before

22   another judge, and at that time you pled not guilty to the

23   charges.

24        Do you remember that?

25        DEFENDANT CONTRERAS-DELGADO:  Yes.

1        THE COURT:  Do you understand that you have a right

2    to maintain that plea of not guilty if you wanted to?

3        DEFENDANT CONTRERAS-DELGADO:  Yes.

4        THE COURT:  Do you understand that if you were to

5    maintain a plea of not guilty, you would then have the right

6    to a trial by jury?

7        DEFENDANT CONTRERAS-DELGADO:  Yes.

8        THE COURT:  Do you understand that at the trial you

9    would be presumed to be innocent?

10        DEFENDANT CONTRERAS-DELGADO:  Yes.

11        THE COURT:  Do you understand that it's the

12    Government that has to prove that you are guilty with

13    competent evidence and beyond a reasonable doubt?

14        DEFENDANT CONTRERAS-DELGADO:  Yes.

15        THE COURT:  Do you understand that at the trial

16    your attorney would be with you at all times to help you with

17    your defense?

18        DEFENDANT CONTRERAS-DELGADO:  Yes.

19        THE COURT:  And that you would have the right to

20    see every witness that would come to trial to testify and

21    listen to every witness' testimony.

22        Do you understand that?

23        DEFENDANT CONTRERAS-DELGADO:  Yes.

24        THE COURT:  And that you also would have the right

25    to have those witnesses cross-examined as part of your

1   defense.

2          Do you understand that?

3          DEFENDANT CONTRERAS-DELGADO:  Yes.

4          THE COURT:  That you also would have the right not

5   to testify at the trial, or even present any evidence, unless

6   you voluntarily would elect to do so as part of your defense.

7          Do you understand that?

8          DEFENDANT CONTRERAS-DELGADO:  Yes.

9          THE COURT:  And that you also would have the right

10  to have witnesses come to the trial to testify on your behalf

11  as part of your defense, if necessary, by Court order.

12         Do you understand that?

13         DEFENDANT CONTRERAS-DELGADO:  Yes.

14         THE COURT:  And do you understand that if you were

15  to decide not to testify at the trial, or even present any

16  evidence, that cannot be used against you?

17         DEFENDANT CONTRERAS-DELGADO:  Yes.

18         THE COURT:  Do you understand that by entering a

19  plea of guilty, if I accept your plea, there will not be a

20  trial?

21         DEFENDANT CONTRERAS-DELGADO:  Yes.

22         THE COURT:  Do you understand that you will have

23  waived or given up your right to a trial and those other

24  rights that are associated with the trial that I just

25  mentioned to you?

1        DEFENDANT CORDERO-RONDON:  Yes.

2        THE COURT:  Do you understand that by entering a

3   plea of guilty, you also waive or give up your right not to

4   incriminate yourself?

5        DEFENDANT CORDERO-RONDON:  Yes.

6        THE COURT:  And the reason for that waiver is

7   because I have to ask you some questions about what you did

8   in order for me to be satisfied that you are guilty.

9        Do you understand that?

10       DEFENDANT CONTRERAS-DELGADO:  Yes.

11       THE COURT:  Do you understand that you will have to

12  acknowledge your guilt?

13       DEFENDANT CONTRERAS-DELGADO:  Yes.

14       THE COURT:  Do you understand that the offense to

15  which you are pleading guilty, Count One of the indictment,

16  which is possession of a machine gun, is a felony offense?

17       DEFENDANT CONTRERAS-DELGADO:  Yes.

18       THE COURT:  Do you understand that if I accept your

19  plea, you will be adjudged guilty of that felony offense?

20       DEFENDANT CONTRERAS-DELGADO:  Yes.

21       THE COURT:  Do you understand that that

22  adjudication of guilt may deprive you of some rights?

23       For example, you won't able to hold public office;

24  you won't be able to serve on a jury; you won't be able to

25  possess any kind of firearm; and if you move somewhere in the

1   United States out of Puerto Rico, you may even lose your

2   right to vote.

3               Do you understand that?

4               DEFENDANT CONTRERAS-DELGADO:  Yes.

5               THE COURT:  Mr. Contreras, you are charged in the

6   indictment of possession of a machine gun in that, on or

7   about January 25, 2017, here in Puerto Rico, you knowingly

8   possessed a firearm, which was modified to shoot more than

9   one round of ammunition without manual reloading by a single

10  function of a trigger, that firearm was a Model 17, Glock

11  pistol, 9mm caliber, serial number EZU785US.

12              Mr. Contreras, is that what you did?

13              DEFENDANT CONTRERAS-DELGADO:  Yes.

14              THE COURT:  Is that what you are pleading guilty

15  to?

16              DEFENDANT CONTRERAS-DELGADO:  Yes.

17              THE COURT:  Mr. Chattah, would you please inform

18  the Court and the Defendant what the maximum and minimum

19  punishment that the law provides for the offense to which he

20  wants to plead guilty.

21              MR. CHATTAH:  Up to ten years in prison, up to

22  $250,000 in fine, and up to three years of supervised

23  release, Your Honor.

24              THE COURT:  And a special monetary assessment of

25  $100.

1          MR. CHATTAH:  Yes, Your Honor.

2          THE COURT:  Do you agree, Mr. Michelen?

3          MR. MICHELEN:  Yes, Your Honor.

4          THE COURT:  Have you discussed and explained the

5     terms of supervised release to Mr. Contreras?

6          MR. MICHELEN:  I have, Your Honor.

7          THE COURT:  Mr. Contreras, on the date that you are

8     sentenced, I will also impose upon you a term of supervised

9     release, which will commence when you are released from

10    prison.

11         During that term of supervised release, you will be

12    under the supervision of a probation officer, and you will

13    have to comply with some conditions that I will also impose

14    upon you on the date that you are sentenced.

15         If you violate any of those conditions, or don't

16    follow them, the probation officer will find out and will

17    tell me, and then we will have a hearing in court.  And

18    depending on what happens at the hearing, I can revoke your

19    term of supervised release and send you back to prison.

20         Do you understand that?

21    DEFENDANT CONTRERAS-DELGADO:  Yes.

22         THE COURT:  Do you understand all those serious

23    possible consequences of your plea of guilty?

24    DEFENDANT CONTRERAS-DELGADO:  Yes.

25         THE COURT:  Do you understand that sentencing

1 within the sentencing guidelines is a matter for the Court

2 decide?

3            DEFENDANT CONTRERAS-DELGADO:  Yes.

4            THE COURT:  Have you and Mr. Michelen talked about

5 how the sentencing guidelines might apply to your case?

6            DEFENDANT CONTRERAS-DELGADO:  Yes.

7            THE COURT:  Do you understand that I won't be able

8 to determine what the guideline sentence for your case will

9 be until after I receive a completed pre-sentence

10 investigation report prepared by the probation officer?

11            DEFENDANT CONTRERAS-DELGADO:  Yes.

12            THE COURT:  Do you understand that the sentence

13 that I may impose upon you may be different from any estimate

14 that Mr. Michelen may have given you and even different from

15 whatever recommendation he may make to me at the date of your

16 sentence or that the Government may make to me at the date of

17 your sentence?

18            Do you understand that?

19            DEFENDANT CONTRERAS-DELGADO:  Yes.

20            THE COURT:  Do you understand that whatever --

21            Let me put it this way:  Do you understand that the

22 sentence that I may impose may be affected by your criminal

23 history?

24            DEFENDANT CONTRERAS-DELGADO:  Yes.

25            THE COURT:  Do you understand that even after your

sentencing guideline range has been determined, I can in some

circumstances depart from those guidelines and impose a

sentence on you that is either more severe or less severe

than the sentence called for by the guidelines?

DEFENDANT CONTRERAS-DELGADO:  Yes.

THE COURT:  Do you understand that if I impose a

sentence on you that is either more severe or less severe

than the sentence called for by the guidelines, you may not

withdraw your plea?

DEFENDANT CONTRERAS-DELGADO:  Yes.

THE COURT:  Do you understand that there is no

parole in the Federal system?

DEFENDANT CONTRERAS-DELGADO:  Yes.

THE COURT:  If you are sentenced to prison, you

will not be released on parole.

Do you understand that?

DEFENDANT CONTRERAS-DELGADO:  Yes.

THE COURT:  Are you pleading guilty because someone

forced you to change your plea?

DEFENDANT CONTRERAS-DELGADO:  No.

THE COURT:  Is your plea a completely voluntary

plea on your own behalf?

DEFENDANT CONTRERAS-DELGADO:  Yes.

THE COURT:  Mr. Chattah, has the Government

provided full and complete discovery to Mr. Michelen?

1          MR. CHATTAH:  Yes, Your Honor.

2          THE COURT:  Please give a brief explanation of the

3    theory to be presented to prove Mr. Contreras guilty if a

4    trial were to be held.

5          MR. CHATTAH:  On January 26, 2017, at approximately

6    2:00 p.m., PRPD narcotics agents entered the Brisas de

7    Bayamón Public Housing Project in an undercover capacity and

8    dressed in civilian clothing.

9          Agents approached Buildings 16 and 18, which is

10   where the drug points are established, according to their

11   intelligence gathering.

12         PRPD agents went up to the fourth floor of Building

13   16 and did not see any illegal drugs or firearms.

14         As they walked back down to the third floor, they

15   observed an individual standing at the door of the apartment

16   on the left-hand side.

17         PRPD agents later identified this person as Angel

18   Rafael Contreras-Delgado.

19         Contreras-Delgado looked at the agents and said,

20   "*Que pasa, flaco*," meaning, "What's going on, man?"  This

21   while he lifted his hands in the air.

22         When Contreras-Delgado raised his hands, his shirt

23   also raised revealing a black firearm loaded with an extended

24   magazine in his waistband.

25         Agents immediately identified themselves as police,

1   neutralized Contreras-Delgado, and asked him if he had a

2   firearms license, to which he replied, "No."

3           PRPD agents proceeded to arrest Contreras-Delgado

4   at Apartment No. 158 and seized the following from his

5   waistband:  One Glock pistol, Model 17, 9mm caliber, serial

6   number EZU785US, loaded with a Glock 31-round capacity

7   magazine and 31 rounds of 9mm ammunition.

8           While conducting the arrest, PRPD agents found in

9   plain view, next to Mr. Contreras-Delgado, one Glock

10  magazine, 31-round capacity, loaded with 31 rounds of 9mm

11  ammunition, and one Glock magazine, 17-round capacity, loaded

12  with 15 rounds of 9mm ammunition.

13          THE COURT:  In total, three magazines?

14          MR. CHATTAH:  Judge, that's what it's saying here,

15  but maybe Mr. Michelen might correct me from the discovery.

16  But it seems like there might be two, because it says 31 --

17          THE COURT:  That's precisely why I ask.

18          MR. CHATTAH:  To be honest, I am not clear at this

19  moment.  I will find out before sentencing.

20          THE COURT:  Okay.

21          MR. CHATTAH:  On January 25, 2017, at approximately

22  7:23 p.m., ATF agents interviewed Contreras-Delgado.  They

23  read Mr. Contreras' Miranda warnings, which he understood and

24  agreed to speak to the agents without the presence of

25  counsel.

1    Mr. Contreras admitted he was present at the PHP

2    and that he had been staying there for the past week.

3    In regards to the firearm, he stated that he

4    purchased it about a week ago in the area of Caguas and paid

5    $1,000 for it.

6    He also told the agents that he knew the pistol was

7    fully automatic because he specifically asked for it to be

8    fully automatic when he purchased it.

9    The ATF Firearms Technology Branch later tested the

10   firearm, and they determined that it had been modified to

11   expel more than one round of ammunition with a single pull of

12   the trigger.

13   It was also determined that the firearm and

14   ammunition seized affected and/or traveled in interstate or

15   foreign commerce.

16   THE COURT:  So, Mr. Contreras, do you agree with

17   the Government's version that you just heard?

18   MR. MICHELEN:  And, Your Honor, I would say,

19   because it is a straight plea, I think it would be sufficient

20   if he pleads guilty to the elements of the offense.

21   THE COURT:  Well, we will take all this information

22   into consideration at sentencing.

23   MR. MICHELEN:  Of course.  Of course.  And -- sure.

24   THE COURT:  You are agreeing, Mr. Contreras, to

25   what is in the -- charged in the indictment; am I correct?

1          DEFENDANT CONTRERAS-DELGADO:  Yes.

2          THE COURT:  Is that what you did, what is charged

3     in the indictment?

4          DEFENDANT CONTRERAS-DELGADO:  Yes.

5          THE COURT:  Do you still want to plead guilty?

6          DEFENDANT CONTRERAS-DELGADO:  Yes.

7          THE COURT:  Mr. Contreras, how do you plead to the

8     charges before the Court?  Guilty or not guilty?

9          DEFENDANT CONTRERAS-DELGADO:  Guilty.

10          THE COURT:  It's the finding of the Court in the

11     case of the United States versus Angel Rafael

12     Contreras-Delgado that Mr. Contreras is fully competent and

13     capable of entering an informed plea, that he is aware of the

14     nature of the charge and the consequences of his plea, and

15     that his plea of guilty is a knowing and voluntary one,

16     supported by an independent basis in fact containing each of

17     the essential elements of the offense.

18          Mr. Contreras' plea is, therefore, accepted, and he

19     is now adjudged guilty of that offense.

20          The Court orders a pre-sentence investigation

21     report to be prepared by the probation officer to assist the

22     Court in sentencing.

23          Mr. Contreras, it's very important that you

24     cooperate with the probation officer in the preparation of

25     this report.  Mr. Michelen may accompany you during and help

1    you with your participation with the probation officer

2    assigned to your case.

3          Do you understand that?

4          DEFENDANT CONTRERAS-DELGADO:  Yes.

5          THE COURT:  May I have a sentencing date, please.

6          THE CLERK:  July 13, 2017, at 9:00 a.m.

7          THE COURT:  Sentence on July 13, 2017, at 9 o'clock

8    in the morning.

9          Mr. Michelen, I will enter the order that you want,

10    that you asked for three times.

11          MR. MICHELEN:  Thank you, Your Honor.  I appreciate

12    it.

13          THE COURT:  This is for mitigation purposes only;

14    right?

15          MR. MICHELEN:  Of course, Your Honor.

16          THE COURT:  It's not for competency.

17          MR. MICHELEN:  It is not for competency.  It is

18    purely -- and I have spoken to Mr. Chattah about this.

19          THE COURT:  You are aware of this, Mr. Chattah?

20          MR. CHATTAH:  Yes, I am.

21          THE COURT:  Okay.

22          Is there anything else?

23          MR. MICHELEN:  No, Your Honor.

24          Thank you very much.

25          THE COURT:  You are excused.

1    MR. CHATTAH:  Thank you, Your Honor.

3    (PROCEEDINGS ADJOURNED AT 2:55 P.M.)

REPORTER'S CERTIFICATE

I, JOE REYNOSA, Official Court Reporter for the United States District Court for the District of Puerto Rico, appointed pursuant to the provisions of Title 28, United States Code, Section 753, do hereby certify that the foregoing is a true and correct computer-aided transcript of proceedings had in the within-entitled and numbered cause on the date herein set forth; and I do further certify that the foregoing transcript has been prepared by me or under my direction.

S/Joe Reynosa

_____

**JOE REYNOSA, CSR, RPR**
United States Court Reporter
Federico Degetau Federal
Building, Room 150
150 Carlos Chardón Street
San Juan, Puerto Rico 00918-176
(787) 772-3000

Joe Reynosa, CSR, RPR
Official Court Reporter