# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,    ) | CASE NO. 17-CR-075 (FAB) |
| Plaintiff,                ) | |
| vs.                   ) | SENTENCING HEARING |
| ANGEL RAFAEL CONTRERAS-DELGADO, ) | |
| Defendant.             ) | |

TRANSCRIPT OF SENTENCING HEARING
HELD BEFORE THE HONORABLE JUDGE FRANCISCO A. BESOSA
SAN JUAN, PUERTO RICO
Tuesday, August 8, 2017

APPEARANCES:

For the United States:
          MARC S. CHATTAH, AUSA
          United States Attorney's Office
          Torre Chardón, Suite 1201
          350 Carlos Chardón Street
          San Juan, PR 00918

For the Defendant:
          JUAN J. MICHELEN, AFPD
          Federal Public Defender's Office
          Patio Gallery Building
          241 Franklin D. Roosevelt Ave.
          Hato Rey, PR 00918-2441

Produced by mechanical stenography; computer-aided transcription

Joe Reynosa, CSR, RPR
Official Court Reporter

1          (PROCEEDINGS COMMENCED AT 9:30 A.M.)

2

3          THE CLERK:  Criminal Case No. 17-075, United States

4   of America versus Angel Rafael Contreras-Delgado for

5   Sentencing Hearing.

6          On behalf of the Government, Assistant United

7   States Attorney Marc S. Chattah.

8          On behalf of the Defendant, Assistant Federal

9   Public Defender Juan J. Michelen.

10          Defendant is present and assisted by the certified

11   court interpreter.

12          MR. MICHELEN:  Your Honor, good morning.

13          MR. CHATTAH:  Good morning, Your Honor.  The United

14   States is ready to proceed.

15          THE COURT:  Thank you for your sentencing

16   memorandum.

17          MR. MICHELEN:  You are welcomed, Your Honor.

18          THE COURT:  Is there anything you would like to say

19   on behalf of Mr. Contreras --

20          MR. MICHELEN:  Yes, Your Honor.

21          THE COURT:  -- or highlight anything from your

22   sentencing memorandum?

23          MR. MICHELEN:  Your Honor, I turned over to the

24   Government and the probation office Dr. Alexander Ramos'

25   report and evaluation.  She is present.  I would like to

1  briefly present her, her testimony.

2           MR. CHATTAH:  Your Honor, we would stipulate.  I am

3  assuming she is going to testify in accordance with her

4  report.

5           THE COURT:  Let me see the report.

6           (Whereupon, a document was handed to the Court by

7  Defense Counsel.)

8           THE COURT:  Basically, what Ms. Ramos indicates is

9  that, "It's recommended that Mr. Contreras receive substance

10  abuse treatment to address his problems with addiction and to

11  prevent relapses."  That's her recommendation.

12           MR. MICHELEN:  It is.  I wanted to --

13           THE COURT:  Will you stipulate to that?

14           MR. CHATTAH:  I will stipulate to that, Your Honor.

15           THE COURT:  Ms. Perez, would you stipulate to that?

16           THE PROBATION OFFICER:  Yes, Your Honor.  The

17  information will be included in the PSR.

18           THE COURT:  Okay.  Very good.  Thank you.

19           There is no need to present Ms. Ramos.

20           What would like to say --

21           Do you have this, Ms. Perez?

22           THE PROBATION OFFICER:  Yes.  It was provided to

23  me, Your Honor.

24           THE COURT:  Please, let's make a change in the PSR

25  to add this report, Psycho Diagnostic Assessment Report, by

1  Alexandra Ramos-Duchateau, clinical psychologist.  And we

2  will include, as one of the conditions, mental health

3  treatment.

4        THE PROBATION OFFICER:  Yes, Your Honor.

5        MR. MICHELEN:  Thank you.

6        Your Honor, one of the other points I was hoping

7  Dr. Ramos's testimony could highlight is the different

8  factors that would go into -- should be used to analyze

9  whether or not --

10        THE COURT:  That is something that the probation

11  officer will take care of when the person is on -- when

12  Mr. Contreras is on supervised release.  They will make their

13  own determination as to what type of treatment is to be done.

14  Same thing by the BOP.

15        MR. MICHELEN:  Sure.

16        Your Honor, so --

17        THE COURT:  And the pre-sentence report will have

18  that.  So the BOP will see it.

19        MR. MICHELEN:  Of course.

20        Your Honor, what I would want to highlight from the

21  sentencing memo is the idea that because of

22  Mr. Contreras-Delgado's age, a prolonged sentence of

23  imprisonment may not actually contribute to his

24  rehabilitation and to his --

25        THE COURT:  That's not what Ms. Ramos says.

1  Ms. Ramos says that he is in remission because of his

2  incarceration.

3          MR. MICHELEN:  Right.

4          Well, Your Honor, I believe her testimony, if she

5  were to testify, would have in part been that it is not just

6  about the actual treatment someone receives, but it's about

7  all the environmental factors that go into what would help

8  someone rehabilitate.  So someone of his age, there does come

9  a point, Your Honor, where the sentence of imprisonment is --

10 after a certain length, it's not really helping anyone.  And

11 if anything, it could start to hurt someone and start to

12 negatively impact his progress and his rehabilitation.

13         Based on that, Your Honor, based on the sentencing

14 memo I filed and based on the idea that his criminal history

15 is nonexistent in terms of at least as an adult, and the risk

16 of reoffending is low, what he needs, Your Honor, is -- and I

17 believe Dr. Ramos would have testified to that effect, that

18 it's not -- with Angel, it's not really about whether he has

19 violent tendencies or he is at risk of necessarily

20 reoffending.  It's about not having the proper treatment and

21 support.

22         And, Your Honor, as my report highlighted, when he

23 does receive the proper treatment, Your Honor, when he is at

24 rehabilitation centers, when he is receiving support from his

25 family, when he is going to school consistently, he does

1    thrive.  His grades do improve.  The reports from the

2    different places show that he does well in a kind of

3    controlled environment, where there is discipline for him --

4    there is it discipline on him.

5          So this idea that he needs treatment -- of course

6    he does.  Whether or not the entire time it needs to be

7    incarcerated, I would argue it doesn't, Your Honor.

8          So, because of that, that is why I recommended and

9    I ask the Court to consider departing and offering -- and

10   sentencing him to part incarceration and part home

11   confinement where he can --

12         THE COURT:  Split sentence?

13         THE PROBATION OFFICER:  If I may, Your Honor.

14         At this time, Defendant is at Criminal history

15   category 17.  Section D of the guidelines does not allow

16   split sentences.  In this case it would have to be pursuant

17   to a variance at your discretion, Your Honor.

18         THE COURT:  Okay.

19         MR. MICHELEN:  And Your Honor could do that.

20   Your Honor could make that determination where he would not

21   be incarcerated more than he needs to be.  And we could

22   ensure that he is rehabilitated, and he is at least set up,

23   Your Honor, in the best position to move forward and be

24   successful.  He is way too young to be in this element for

25   such a prolonged period of time.

1          So that's what we are asking the Court to consider

2     doing.

3          Thank you.

4          THE COURT:  Mr. Chattah.

5          MR. CHATTAH:  Your Honor, I would agree with most

6     of what the Defense proposes in the sense that he does do

7     well under a controlled environment, and the Bureau of

8     Prisons does provide a controlled environment.  And he would

9     do well with mental health and substance abuse treatment, all

10    which could be provided by the Bureau of Prisons.

11         So everything that the Defense requests -- or a lot

12    of the results could be accomplished if you were to sentence

13    him within his guidelines at the Bureau of Prisons.

14         THE COURT:  Well, I can't sentence him just for him

15    to get treatment.  That the Supreme Court has said that I

16    cannot do.

17         MR. CHATTAH:  That I understand.

18         But you should also consider the facts of this case

19    where he did have a machine gun in his waist.  And you can

20    also look -- even though he does have no prior criminal

21    history points, he does have prior contacts with the system

22    where he threatens his mother and other people with knives.

23    And that's something you should take into consideration.

24         Again, Your Honor, I would recommend to the Court

25    that you sentence him within his guidelines and not to vary.

1      THE COURT:  Any sentence within the guidelines, or

2  any particular sentence within the guidelines?

3      MR. CHATTAH:  Judge, no particular sentence.  Just

4  within the guidelines, I think would be appropriate.

5      Thank you.

6      THE COURT:  Mr. Contreras, is there anything you

7  would like to say?

8      DEFENDANT CONTRERAS-DELGADO:  Well, I would like to

9  thank you and to tell you that I am very repentant for what I

10  did.  This served me as a lesson to be able to finish with my

11  studies and appreciate my family.  And the truth is that I

12  want to tell you that I am very repentant for what I did, and

13  I want to say I am sorry to you, Your Honor.

14      THE COURT:  On April 20, 2017, Defendant Angel

15  Rafael Contreras-Delgado pled guilty to the indictment in

16  Criminal Case No. 17-075, which charges a violation of

17  Title 18, United States Code section 922(o), illegal

18  possession of a machine gun, which is a class C felony.

19      The November 1st 2016 Edition of the Sentencing

20  Guidelines Manual has been used to calculate the guideline

21  adjustments pursuant to the provisions of guideline section

22  1B1.11(a).

23      Based on the provisions of guideline section

24  2K2.1(a)(4)(B), a base offense level of 20 has been

25  determined because Mr. Contreras was convicted of possessing

1   a machine gun, which is a firearm described in Title 26,

2   United States Code section 5845(a); specifically, a 9mm,

3   Model 17, Glock pistol, serial number EZU785US, modified to

4   shoot automatic, and he was a prohibited person, a drug user,

5   at the time he committed the offense.

6         Because Mr. Contreras timely accepted

7   responsibility for his offense, however, the offense level is

8   reduced by three levels pursuant to guideline sections

9   3E1.1(a) and 3E1.1(b).

10         There are no other applicable guideline

11   adjustments.

12         His total offense level is 17.

13         Mr. Contreras has two prior juvenile adjudications.

14         In 2005, at the age of 10, he was charged with

15   violation of Article 153 of the Puerto Rico Penal Code and

16   Article 5.05 of the Puerto Rico Weapons Law at the Bayamón

17   Superior Court Juvenile Affairs.

18         He threatened underaged children with a knife,

19   actually threatening to kill them, and he was sentenced to a

20   diversion program.

21         In 2011, at the age of 16, he was charged with

22   violation of Article 188 of the Puerto Rico Penal Code and of

23   Article 193, illegal appropriation, also by the Bayamón

24   Superior Court Juvenile Affairs.

25         He threatened his mother -- threatened to kill his

mother and stole items that belonged to her.  He was

sentenced to 12 months' probation under the custody of the

Department of Family.

These juvenile offenses did not result in criminal

history points pursuant to sentencing guideline section

4A1.2(e)(3).

Mr. Contreras was also arrested in 2014 for a

controlled substance offense, but the case was dismissed

pursuant to the Puerto Rico Speedy Trial Act.

As usual, in the local justice system, he was not

charged again.

Accordingly, Mr. Contreras does not have any

criminal history points, and his Criminal History Category

is I.

Based on a total offense level of 17 and a Criminal

History Category of I, the guideline imprisonment range for

Mr. Contreras' offense is from 24 to 30 months.

There is a fine range of $10,000 to $95,000, plus a

supervised release term of at least one and up to three

years.

The probation officer has correctly adjusted the

guideline computations, and the pre-sentence investigation

report satisfactorily reflects the components of

Mr. Contreras' offense by considering its nature and

circumstances.

1          The Court has also considered the other sentencing

2     factors set forth in Title 18, United States Code

3     section 3553(a).

4          Mr. Contreras is 23 years old.  He has an eleventh

5     grade education, was employed washing cars prior to his

6     arrest for his offense, and he has a history of using

7     marijuana.

8          Today, Mr. Contreras has requested a split

9     sentence.

10          Mr. Michelen, you are requesting a split sentence

11     of how many months?

12          MR. MICHELEN:  Your Honor, I would ask a sentence

13     of 12 months incarceration, 12 months --

14          THE COURT:  Split sentence of 12 months

15     incarceration and 12 months home incarceration.

16          The Government has argued for any sentence within

17     the guideline range.

18          The Court has considered Mr. Contreras' personal

19     characteristics, as well as the nature of the offense.  The

20     Court has also considered that the automatic pistol which

21     Mr. Contreras possessed was loaded with a 31-round high

22     capacity magazine, and there was an additional 31-capacity

23     magazine loaded with 9mm ammunition.  A 17-round high

24     capacity magazine loaded with 15 rounds of 9mm ammunition was

25     also in Mr. Contreras' possession.

1    Mr. Contreras told the arresting agents that he

2    knew the pistol was fully automatic and that he had

3    specifically requested that specification when he purchased

4    the Glock pistol.  He also stated that he possessed the

5    weapon for protection, and admitted that he sold drugs.

6    This is not Mr. Contreras' first brush with the

7    law.  And as the pre-sentence investigation report reflects,

8    he has benefited from probation and programs offered by the

9    Commonwealth of Puerto Rico and the Court of Juvenile

10   Affairs.

11   These facts, in conjunction with the Defendant's

12   prior criminal history, which involved repeated acts of

13   violent behavior, as mentioned before, including threatening

14   children with a knife and threatening -- threatening to kill

15   children with a knife and threatening to kill his mother, and

16   also being arrested for possession with intent to distribute

17   marijuana and cocaine, move the Court to impart a sentence

18   above the guideline range.

19   In that sense, the Court is agreeing with the

20   probation officer.

21   The Court finds that a sentence above the guideline

22   range reflects the seriousness of the offense, promotes

23   respect for the law, protects the public from further crimes

24   by Mr. Contreras, and addresses the issues of deterrence and

25   punishment.

1          Accordingly, it's the judgment of the Court that

2   Angel Rafael Contreras-Delgado is committed to the custody of

3   the Bureau of Prisons to be imprisoned for a term of

4   46 months.

5          Upon release from confinement, Mr. Contreras shall

6   be placed on supervised release for a term of three years to

7   be served under the following terms and conditions:

8          He shall observe the standard conditions of

9   supervised release recommended by the United States

10  Sentencing Commission and adopted by this Court.

11         He shall not commit another Federal, State or local

12  crime.

13         He shall not possess firearms, destructive devices

14  or other dangerous weapons.

15         He shall complete his high school education and

16  shall participate in vocational training and a job placement

17  program as recommended by the probation officer.

18         He shall provide the probation officer access to

19  any financial information upon request.

20         He shall remain under curfew at his residence of

21  record from 6:00 p.m. to 6:00 a.m. for a period of six

22  months, to commence upon his release from imprisonment.

23         During this time, he shall remain in his residence

24  except for employment or other activities approved in advance

25  by the probation officer.

1    He shall wear an electronic device 24 hours a day

2    and shall observe the rules specified by the probation

3    officer.

4    He is ordered to pay the daily cost of the

5    electronic monitoring device.

6    Payment shall be based on his ability to pay or the

7    availability of payments by third parties.

8    In addition to any other telephone or cell phone he

9    may have, Mr. Contreras shall maintain a telephone at his

10   residence without a modem, an answering machine, or a

11   cordless feature during the term of electronic monitoring.

12   He shall cooperate in the collection of a DNA

13   sample as directed by the probation officer pursuant to the

14   revised DNA collection requirements and Title 18, United

15   States Code section 3563(a)(9).

16   He shall submit himself and his property, house,

17   residence, vehicles, papers and effects, computers and other

18   electronic communication or data storage devices or media to

19   a search at any time, with or without a warrant, by the

20   probation officer and, if necessary, with the assistance of

21   any other law enforcement officer, but only in the lawful

22   discharge of the supervision functions of the probation

23   officer, who must have a reasonable suspicion of unlawful

24   conduct or of a violation of a condition of supervised

25   release.

1          The probation officer may seize any electronic

2   communication or electronic device or medium, which will be

3   subject to further forensic investigation or analysis.

4          Failure to permit a search and seizure may be

5   grounds for revocation of supervised release.

6          Mr. Contreras shall warn any other resident or

7   occupant that his premises may be subject to searches

8   pursuant to this condition.

9          He shall not possess or use controlled substances

10  unlawfully and shall submit to a drug test within 15 days of

11  release from imprisonment.

12          After his release, Mr. Contreras shall submit to

13  random drug testing, not less than three samples during the

14  supervision period, but not more than 104 samples each year,

15  in accordance with the Drug Aftercare Program Policy of the

16  United States Probation Office, as has been approved by this

17  Court.

18          If the illegal use of controlled substances is

19  detected in any sample, Mr. Contreras shall participate in an

20  inpatient or an outpatient substance abuse treatment program

21  for evaluation or treatment as arranged by the probation

22  officer.

23          Payment shall be based on his ability to pay or the

24  availability of payments by third parties as approved by the

25  Court.

1    He shall participate in an approved mental health
2 treatment program for evaluation and to determine if
3 treatment is necessary.
4    If deemed necessary, the treatment will be arranged
5 by the probation officer in consultation with the treatment
6 provider.
7    The modality, duration and intensity of treatment
8 will be based on the risks and needs identified.
9    Mr. Contreras will contribute to the cost of those
10 services based on his ability to pay or the availability of
11 payments by third parties.
12    Having considered Mr. Contreras' financial
13 condition, a fine is not imposed.
14    A special monetary assessment in the amount of $100
15 is imposed, however, as required by law.
16    Mr. Contreras, you have to right to appeal your
17 conviction and sentence.
18    A notice of appeal must be filed in this court
19 within 14 days from when the judgment of the Court will be
20 entered.
21    You have a right to apply for leave to appeal
22 *in forma pauperis* if you are unable to pay the cost of an
23 appeal.
24    Because you are represented by court-appointed
25 counsel, he will continue to represent you through any appeal

1   unless a substitute counsel is later appointed.

2           Anything else?

3           MR. MICHELEN:  Yes, Your Honor.

4           We would ask you to reconsider going above the

5   guidelines, and we would object to the Court going above the

6   guidelines in this case.

7           THE COURT:  Denied.

8           Anything else?

9           MR. MICHELEN:  Yes.

10          We would argue, Your Honor, that there is nothing

11  unique about this case that would warrant going above the

12  guidelines.  This is your run-of-the-mill case that we see

13  here in Puerto Rico, and that's what the sentencing

14  guidelines are for.

15          Thank you.

16          THE COURT:  Is there any particular place you would

17  like me to recommend?

18          MR. MICHELEN:  Yes, Your Honor.

19          We would like to remind the Court about the motion

20  we filed earlier on in this case regarding his medical

21  condition, and we would ask the Court to ensure that if the

22  marshals are going to put him on a plane, that they make sure

23  he undergoes a physical evaluation.

24          THE COURT:  Any particular designation you would

25  like me to make?

1          MR. MICHELEN:  We would ask Your Honor to send

2    him -- to recommend the Tampa, Orlando area where he has

3    family.

4          THE COURT:  I will recommend that Mr. Contreras be

5    designated to the Coleman facility in Orlando and that the

6    BOP provide the medical services that he needs.

7          Anything else?

8          MR. MICHELEN:  Thank you, Your Honor.

9          THE COURT:  You are excused.

10

11          (PROCEEDINGS ADJOURNED AT 9:50 A.M.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

REPORTER'S CERTIFICATE

I, JOE REYNOSA, Official Court Reporter for the United States District Court for the District of Puerto Rico, appointed pursuant to the provisions of Title 28, United States Code, Section 753, do hereby certify that the foregoing is a true and correct computer-aided transcript of proceedings had in the within-entitled and numbered cause on the date herein set forth; and I do further certify that the foregoing transcript has been prepared by me or under my direction.

S/Joe Reynosa

_____

**JOE REYNOSA, CSR, RPR**
United States Court Reporter
Federico Degetau Federal
Building, Room 150
150 Carlos Chardón Street
San Juan, Puerto Rico 00918-176
(787) 772-3000